## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANK WILSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **5:18-cv-01786-KOB** |
| **ANDREW SAUL, Commissioner of Social** | ] | |
| **Security,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

### I. INTRODUCTION

On May 27, 2015, the claimant, Frank Wilson, applied for a period of disability and

disability insurance benefits under Title XVI of the Social Security Act. (R. 10). In his

application, the claimant alleged disability beginning on May 15, 2015 because of chronic back

pain. (R. 10). The Commissioner denied the claim on August 14, 2015. (R. 10). The claimant

filed a timely request for a hearing before an Administrative Law Judge and the ALJ held a

hearing on April 13, 2017. (R. 10).

In a decision dated October 6, 2017, the ALJ found that the claimant was not disabled as

defined by the Social Security Act and was thus ineligible for social security disability benefits.

(R. 7). On November 1, 2017, the Appeals Council denied the claimant's request for review. (R.

23). Consequently, the Commissioner's decision became final. The claimant has exhausted his

administrative remedies, and the court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons stated below, the court will affirm the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents one issue for review: whether the ALJ failed to properly evaluate the credibility of the plaintiff's complaints of pain consistent with the Eleventh Circuit's pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. The court must affirm the Commissioner's decision if he applied the correct legal standards and if substantial evidence supports his factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for social security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for

that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [ALJ]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the ALJ's decision, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to social security disability benefits when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." To determine whether a claimant meets the § 423(d)(1)(A) criteria, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpart P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on step three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The Eleventh Circuit has established a three-part "pain standard" that an ALJ must apply "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. Evidence that satisfies the pain standard "is itself sufficient to support a finding of disability." *Id.*

The pain standard requires more than a "single, conclusory statement" of the weight the ALJ gave the claimant's reported symptoms or a recitation of "the factors described in the regulations for evaluating symptoms." SSR 16-3p. Rather, if an ALJ finds that the claimant's complaints do not meet the pain standard and rejects the subjective testimony, the ALJ must "articulate explicit and adequate reasons" for doing so. *Holt*, 921 F.2d at 1223. And "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted).

Also, the ALJ must state with particularity the weight he gave different medical opinions and the reasons why; the failure to do so is reversible error. *Sharfaz v. Bowen*, 825 F.2d 278,279 (11th Cir. 1987). The ALJ may reject any medical opinion if the evidence supports a contrary finding. *Skyock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). And the ALJ must give substantial weight to the medical opinion of a claimant's treating physician, but the ALJ is not required to base his conclusion on the determination of disability by a physician or outside entity. *Symonds v. Astrue*, 448 Fed. Appx. 10, 12 (11th Cir. 2011).

**V. FACTS**

The claimant was 52 years old at the time of the ALJ's final decision. (R. 37). He has an eighth grade education and a GED, and has past relevant work as a kitchen manager. (R. 37, 40). The claimant currently works 24 hours a week as a security guard for Securitas USA. (R. 38). He alleges disability based on back pain, COPD, hernia, diabetes, HBP, and depression. (R. 57).

*The Claimant's Impairments and Medical History*

From 2012 to 2017, the claimant regularly visited Dr. Shikholth at the Valley Pain Clinic in Decatur, AL and complained of lower back pain, left hip pain, neck pain, and knee pain. (R. 392-422). In 2012, the claimant saw Dr. Shikholth four times and reported pain levels between a five and a seven out of ten. The clamant reported that the pain medication prescribed to him helped, but that his pain levels had not improved between any of the appointments. (R. 392-401). In March 2013, the claimant reported that his pain had been much worse because he lifted an ice chest. He also complained of pain in his left hip and leg. (R. 402). In June and September 2013, the claimant reported to Dr. Shikholth an improved pain level of a five out of ten. (R. 404, 406). In December 2013 and March 2014, the claimant experienced worsening pain levels and reported his pain as a seven or eight out of ten. (R. 408-11). Between April 2014 and March 2015, the claimant saw Dr. Shikholth five times and reported an improved pain level of a six out of ten at each appointment. (R. 412-20).

In May 2015, the claimant quit his job because of his back pain and filed for disability benefits. (R. 10).

In June 2015, the claimant saw Dr. Shikholth and reported a worsening pain level of an eight out of ten. He also reported that his pain had severely limited his daily activities. (R. 422). In September 2015, the claimant saw Dr. Shikholth and reported a pain level of a seven out of

5

ten and numbness and weakness in his left leg. (R. 411). Also in September 2015, the claimant saw Dr. Lockard with Gill Family Medicine. The claimant reported that he was depressed, had suicidal thoughts, and that he had not been taking his antidepressants for several months. The results of his physical exam were normal. (R.430-31).

In November 2015, the claimant saw Dr. Shikholth and reported a pain level of six out of ten, and continued pain, numbness, and weakness as reported in past visits. In January 2016, the claimant reported to Dr. Lockard that he was experiencing swelling in his lower extremities, which led Dr. Lockard to order an extremity venous study at Decatur Morgan Hospital. (R. 432). The results of the extremity venous study showed no evidence of acute deep or superficial venous thembosis of the left lower extremity. (R. 440).

In February 2016, the claimant saw Dr. Shikholth and reported right leg swelling, left leg numbness and weakness, and a pain level of seven out of ten. (R. 545). In April 2016, the claimant visited Dr. Lockard again and complained of neck pain. The claimant also admitted to not taking his medication as prescribed. Dr. Lockard ordered an X-ray of the claimant's neck and the results showed a loss of his lordotic curve and well-maintained disc spaces. The doctor's assessment was mixed hyperlipidemia, cervicalgia, and essential hypertension. (R. 436-38).

In September and November 2016, the claimant visited Dr. Shikholth and reported pain levels of six out of ten and continued numbness and weakness in his left leg. The claimant reported that his pain medication allowed him to continue working, but only two days a week. (R. 443, 460).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested and received a hearing before an ALJ. (R. 33). At the hearing, the

claimant testified that, at the time, he worked two 12-hour shifts a week as a security guard for Securitas USA and had been working there since June 2015. (R. 38). Before he started as a security guard, the claimant worked as a kitchen manager at Bosco. The claimant testified that he had worked at this restaurant since he was 18 years old and was employed there for roughly 37 years before he quit. (R. 40). The claimant testified that, while employed at Bosco, he did all the prep work, turned the equipment on in the morning, cooked, oversaw other employees, cleaned at night, and unloaded trucks. (R. 41).

The claimant testified that his pain in his lower back and legs prevented him from returning to full-time work. He claimed that he could not "get up and down or bend over" because of many years of working at the restaurant where he was required to bend over frequently. The claimant testified that he "completely wore [his] body [out]" and that he suffered from arthritis in his hips and legs. (R. 42).

The claimant reported that his pain was then at an eight or nine out of ten on the pain scale and noted that he experienced pain at a nine out of ten when he returned home from a day working as a security guard. The claimant testified that he used a heating pad or laid back in a chair to relieve his pain. (R. 42).

The ALJ then moved the questioning to the types of duties the claimant performed as a security guard. The claimant testified that he could sit and stand as much as needed during the workday. He worked at the main gate of a facility where he checked trucks arriving to load products by inspecting paperwork and "mak[ing] sure they have everything in order." The claimant testified that he checks in seven or eight trucks a day. (R. 43).

The ALJ then asked the claimant if anything else affected his ability to work. The claimant responded that he had COPD and that it makes it difficult to catch his breath at times.

He testified that he uses an inhaler to treat his breathing problems when needed, but does not need to use the inhaler very often because his security guard wok is not very strenuous. The ALJ then asked if the claimant would be capable of working more than 24 hours a week. The claimant testified that he would not because he is "usually down for two days" after completing his weekend work schedule. (R. 44).

The ALJ then moved the questioning to the claimant's capabilities. The ALJ asked how long the claimant believed he could sit in an office-type chair; the claimant responded that he could do so between 30 and 40 minutes. (R. 45). The ALJ then asked how long he would be able to stand in one spot before needing to sit down. The claimant testified that he would be able to stand for an hour if he was able to shift his weight around and move every five to ten minutes. The ALJ then asked how long the claimant would need to sit and rest before being able to stand for another hour. The claimant responded that he would need 30 to 40 minutes of rest in between long standing periods. The ALJ then asked how far the claimant was able to walk before needing to stop and rest. The claimant testified that when he walks to his truck and back—a 30-foot walk each way—he loses his breath. He further testified that he would likely not need to sit down after walking this distance but would need to stop for a minute before continuing. (R. 46).

The ALJ then asked the claimant about his bending and kneeling capabilities. The claimant testified that he cannot bend repeatedly and that it hurts to squat down. He is able to get down onto his knees, but he needs something to hold on to when he stands back up. He testified that he would not be able to crawl on the floor, but would be able to reach over his head with his arms and could carry 10 to 15 pounds. (R. 47).

The ALJ then asked about the claimant's abilities to care for himself on a daily basis. The claimant testified that he is able to bathe and dress himself and do some household chores around

his house. The claimant keeps his yard maintained and mows his lawn with his riding-mower for 15 to 20 minutes at a time before he needs to take a break and drink water. The claimant testified that he is able to drive a car and does so to get to work and the grocery store on a weekly basis. The ALJ asked the claimant about his ability to prepare meals and the claimant responded that he is able to cook but mostly prepares microwave dinners and sandwiches. (R. 48-49).

The claimant also testified that he has a limited social life. He stated that he sees his mother once every couple of weeks, but he does not have any friends or family that come to visit him. And he goes hunting with someone because he no longer feels comfortable going alone. (R. 49).

Next, the vocational expert testified about the type and availability of jobs that the claimant was able to perform. (R. 50). The ALJ asked the VE to categorize the claimant's past work over the last 15 years in accordance with the Dictionary of Occupational Titles. The VE testified that the claimant had worked as a kitchen manager, which was classified as medium and skilled with a SVP of seven. The VE also testified that the claimant's work as a security guard is classified as light and semiskilled with a SVP of three. (R. 51). The ALJ only considered the kitchen manager position as past relevant work because the position as a security guard did not meet the qualifications for past relevant work under the Social Security Act.

The ALJ then asked the VE a series of hypotheticals. The first hypothetical person shared the claimant's education and age; was limited to a medium exertion level; was not able to climb; could occasionally stoop; could frequently balance, kneel, crouch and crawl; and should avoid all hazards, such as unprotected heights and dangerous moving machinery. The ALJ asked the VE if this hypothetical person would be able to perform the claimant's past relevant work; the VE testified that this hypothetical person would not. The VE testified that the stooping

limitation would prevent the hypothetical person from being able to perform the claimant's past relevant work as a kitchen manager. (R. 51).

The ALJ then asked the VE if that same hypothetical person would be able to perform any other work in the national economy. The VE testified that jobs existed for which the hypothetical person would qualify. These jobs would be medium, unskilled jobs all with a SVP of two, such as hand packer, assembler, and inspector. (R. 52).

For the next hypothetical, the ALJ asked the VE to assume all the previous limitations, but to reduce the exertion level from medium to light. The VE testified that this hypothetical person would not be able to perform the claimant's past relevant work but would be able to perform other work found in the national economy, such as garment folder, inspector at the light, unskilled level, and hand packer. (R. 52-53).

For the last hypothetical, the ALJ asked the VE to keep all the previous limitations, but to change the exertion level from light to sedentary. (R. 53). The ALJ asked the VE if that person had any transferable skills for direct entry into skilled work. The VE testified that the hypothetical person, with the claimant's age and education level, would not have any transferable skills and would not be able to transition directly into skilled work.

*The ALJ's Decision*

On October 6, 2017, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 7). In his decision, the ALJ worked through the five-step sequential evaluation process identified above. First, the ALJ found that that claimant met the insured status requirements of the Social Security Act through December 31, 2020. Second, the ALJ found that the claimant had not engaged in substantial gainful activity since May 15, 2015. Though the claimant had worked as a security guard since the onset date, the ALJ found that this

work did not rise to the level of substantial gainful activity. Third, the ALJ found that the claimant had severe impairments of lumbar degenerative disc disease, arthritis, and diabetes mellitus. (R. 12).

Fourth, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ considered the claimant's impairments individually and collectively, and determined that these impairments did not meet or equal any of the medical listings. The ALJ noted that state agency physicians who evaluated the claimant's medical records did not find the claimant to have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments. (R. 14). Fifth, after carefully considering the record, the ALJ found that the claimant had the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), except that the claimant could never climb ladders, ropes, or scaffolds, and had to avoid all exposure to workplace hazards. But the claimant could occasionally stoop and frequently balance, kneel, crouch, and crawl. (R. 14).

In reaching his conclusion of the claimant's RFC, the ALJ considered all reported symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence, based on the requirements of 20 CFR §§ 404.1529 and 416.929 and SSR 16-3p. The ALJ also considered opinion evidence in accordance with 20 CFR §§ 404.1527 and 416.927. (R. 14).

In considering the claimant's symptoms, the ALJ analyzed whether the claimant had any underlying medically determinable physical or mental impairments, and, if so, whether these impairments could reasonably be expected to produce the claimant's pain and other symptoms.

(R. 14). The ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms. In conducting his analysis, whenever objective evidence did not support the claimant's statements about the intensity, persistence, or functionally limiting effects of his symptoms, the ALJ considered other evidence in the record to determine if the claimant's symptoms limited his work-related activities. (R. 15).

The ALJ determined that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 15). The ALJ determined that the record did not support any more limitations than those included in the RFC; *i.e.*, never climbing ladders, ropes, or scaffolds, and avoiding all exposure to workplace hazards.

In reaching this conclusion, the ALJ considered that the claimant had mild multilevel lumbar degenerative disc disease with mild facet arthrosis at the L5-S1 vertebral level. The ALJ also considered all of the claimant's treatments received from Dr. Shikholth from 2012 to the time of the ALJ's decision. The ALJ considered how the claimant usually had tenderness to palpation of the lumbar spine with mild limited motion, an antalgic gait, and positive straight leg test. The ALJ also considered how the claimant later developed radiation of pain to the left lower extremity and had a mildly positive facet loading test. (R. 15).

The ALJ also considered that the claimant had a normal motor and sensory exam, did not use a cane or any other type of walking assistance device, and did not wear a back brace. (The claimant also could get on and off the exam table without assistance, performed a full squat, and could walk on his heels and toes.) The ALJ considered the claimant's one report of a swollen leg, but the ALJ found it unclear whether this symptom was related to his degenerative disc disease.

(R. 15).

The ALJ also considered that the claimant has left hip osteoarthritis with mildly limited range of motion. And the ALJ considered the claimant's diabetes that he moderately controlled without the use of medication and without any complications. (R.15).

Then the ALJ considered that the claimant had not been hospitalized for a significant period of time for his back pain and that the claimant had not seen an orthopedic surgeon or neurosurgeon to evaluate his back. The ALJ also noted that the claimant had not participated in or attempted to receive physical therapy. (R. 15).

The ALJ also considered that the record reflects a work history as a security guard after the alleged onset date. Though this work activity did not qualify as substantial gainful activity, the ALJ did consider it to be an indication that the claimant's daily activities, at least at times, had been somewhat more demanding than the claimant had reported. (R. 15).

The ALJ found several factors that weighed against crediting the claimant's testimony about his limitations. First, the ALJ explained that the claimant's reported daily limitations could not be objectively verified with any reasonable degree of certainty. Second, the ALJ found it difficult to attribute the degree of the claimant's alleged limitations to the claimant's medical condition. The ALJ reached this conclusion after considering the relatively weak medical evidence of daily limitations on the record and other factors like the claimant's part-time job and his hunting trips. Third, the ALJ found the claimant's testimony to be inconsistent with his previously reported activities. The claimant reported that he could cook, clean, and hunt on his own, and no evidence of worsening medical conditions existed in the record that would explain why he would no longer be able to engage in those activities. So, the ALJ found that substantial evidence on the record outweighed the claimant's reported daily limitations. (R. 15).

The ALJ gave great weight to the state agency medical consultant's opinion. The consultant reported that the claimant could perform medium work except that he could never climb ladders, ropes, or scaffolds, and must avoid all exposure to workplace hazards, but could occasionally stoop and frequently balance, kneel, crouch, and crawl. (R. 57-66). The ALJ afforded the consultant's opinion great weight because it was consistent with the record as a whole and no other medical opinions showed greater limitations. (R. 16).

The ALJ stated that the claimant was unable to perform past relevant work and would be unable to return to his position as a kitchen manager. The ALJ based this conclusion on the VE's testimony regarding the claimant's limitations and the requirements of a kitchen manager under the DOT classifications. The VE testified that the claimant's RFC precluded his past relevant work as a kitchen manager because it required stooping. (R. 16).

The ALJ stated that the determination of the claimant's disability status did not materially rely on the transferability of skills because the Medical-Vocational Rules framework supported a finding that the claimant was not disabled regardless of whether the claimant had transferable job skills. (R. 16).

In determining whether a successful adjustment to other work could be made, the ALJ considered the claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines as required by 20 CFR Part 404, Subpart P, Appendix 2. Based on the claimant's specific vocational profile, the ALJ concluded that the claimant was not disabled and that jobs existed in sufficient numbers in the national economy that the claimant could perform. (R. 16-17).

Having found that the claimant was not disabled from May 15, 2015 through the date of his decision, the ALJ concluded that the claimant was not entitled to social security disability

benefits. (R. 17).

## VI. DISCUSSION

The claimant argues that the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit pain standard. The court disagrees.

As stated above, according to the Eleventh Circuit pain standard, an ALJ evaluating a claimant's pain and other subjective complaints must first consider whether the claimant demonstrated an underlying medical condition. *Holt*, 921 F.2d at 1223. If the claimant shows an underlying medical condition, then the ALJ must determine if any objective medical evidence confirms the severity of the reported pain, or if the underlying medical condition has been objectively confirmed and is so severe that one could reasonably expect it to result in the reported pain. *Id.* And a finding that objective medical evidence supports the claimant's subjective pain testimony and that the claimant's medical condition can reasonably be expected to produce the reported symptoms is itself sufficient to sustain a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

If the ALJ refuses to credit the claimant's subjective pain testimony, he must articulate explicit and adequate reasons for doing so, or else the court must accept the claimant's testimony as true. *Holt*, 921 F.2d at 1236. Under SSR 16-3p, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." And the ALJ must give more than a conclusory statement that he discredited subjective pain testimony; the ALJ must make specific findings with respect to the assessment of credibility. SSR 16-3p. If the ALJ makes "[a] clearly articulated credibility finding with substantial supporting evidence in the record," then the court

will not the disturb that finding. *Foote*, 67 F.3d at 1562.

In this case, the ALJ evaluated the claimant's reported level of pain and the objective medical evidence and properly articulated his reasons for discrediting the claimant's reported pain levels and limitations. The ALJ concluded that, while some medical records supported some of the claimant's reported symptoms, the overall objective evidence was not entirely consistent with the claimant's subjective testimony regarding limitations, persistence, and intensity of pain. (R. 14-16). In particular, the ALJ noted that the claimant had not been hospitalized for a significant period of time for his back; had not seen a neurologist or neurosurgeon about his back; had not received physical therapy; did not use a TENS unit or assistive device to walk; did not wear a back brace; worked two 12-hour shifts a week as a security guard; went hunting; cared for himself living alone; and could drive, prepare meals, maintain his yard, and do household chores. (R. 14-16).

As he was required to do, the ALJ did consider the evidence on the record that supported some of the claimant's reported symptoms. The ALJ noted that the claimant had been diagnosed with mild multilevel lumbar degenerative disc disease with mild facet arthrosis at the L5-S1 vertebral level, diabetes, COPD, and a positive straight leg test. The ALJ also considered the claimant's continued pain treatment from 2012 to the time of the ALJ hearing. But the ALJ found that the medical records categorized the claimant's pain diagnoses as either mild or managed and that the medical records did not confirm the severity of the claimant's reported pain. (R. 14-16).

So the ALJ evaluated all of the evidence on the record to reach his reasonable conclusion regarding the claimant's subjective pain testimony and articulated explicit and adequate reasons for not giving weight to the claimant's subjective pain testimony. So substantial evidence

supports the ALJ's determination that the claimant's subjective complaints and reported limitations were not consistent with objective evidence. Thus, the ALJ properly discredited the claimant's reported complaints consistent with the Eleventh Circuit pain standard.

## VII. CONCLUSION

For the reasons stated above, substantial evidence supports the Commissioner's decision. Accordingly, by separate order, the court will **AFFIRM** the decision of the Commissioner.

**DONE** and **ORDERED** this 7th day of January, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE